Commonwealth of Pennsylvania, Robert P. Casey, Auditor General, Plaintiff, *v.* The Pennsylvania State University, Defendant.

Argued February 5, 1974, before President Judge BOWMAN and Judges KRAMER, MENCER, ROGERS and BLATT. Judges CRUMLISH, JR. and WILKINSON, JR. did not participate.

*William H. Smith,* Deputy Auditor General and Chief Counsel, with him *Robert P. Meehan,* Deputy Counsel, for plaintiff.

*Delbert J. McQuaide,* with him *McQuaide, Blasko, Brown & Geiser,* for defendant.

OPINION BY JUDGE MENCER, March 29, 1974:

On August 29, 1973, Robert P. Casey, Auditor General of the Commonwealth of Pennsylvania, commenced

an action in assumpsit against The Pennsylvania State University. The Auditor General's complaint alleges that the defendant university is indebted to the Commonwealth in the amount of $271,055. The complaint further alleges that the basis of the debt is the receipt by defendant from the Commonwealth, pursuant to the provisions of Act 61-A of August 31, 1971, of that amount in excess of its net costs for certain educational programs during fiscal year July 1, 1971 through June 30, 1972. The complaint was filed following an audit by the Auditor General for the fiscal year involved and after a demand on the defendant for repayment of the sum of $271,055, plus interest, to the State Treasury.

On September 18, 1973, defendant filed preliminary objections to the complaint in the nature of (1) a petition raising the defense of lack of capacity to sue or, in the alternative, (2) a demurrer for failure to state a claim upon which relief can be granted.[1]

The single but very important question to be answered here is whether or not the Auditor General of the Commonwealth of Pennsylvania has the legal authority to bring this suit against the defendant to collect funds allegedly due the Commonwealth.

There is no serious disagreement that between the years 1915 and 1970 the Auditor General had no authority to institute such actions. Section 23 of the Act of April 28, 1840, P. L. 467, 72 P.S. §4342, granted to the Auditor General specific authority to collect sums due the Commonwealth by taking "all such legal measures as may be by him deemed expedient." However, the Act of June 7, 1915, P. L. 876,[2] repealed the Act of April 28, 1840.

---

[1] Our reading of *Maxson v. McElhinney*, 370 Pa. 622, 88 A. 2d 747 (1952), convinces us that the demurrer is the correct basis for defendant's preliminary objections.

[2] The Act of June 7, 1915, or any reference thereto, does not appear in Purdon's Pennsylvania Statutes Annotated.

Likewise, under the original provisions of The Administrative Code of 1929, Act of April 9, 1929, P. L. 177 (Administrative Code), 71 P.S. §51 et seq., and of The Fiscal Code, Act of April 9, 1929, P. L. 343, 72 P.S. §1 et seq., the Auditor General would not have had the authority to institute the present suit for collection of an alleged debt. The Administrative Code placed the authority to institute suit to collect sums due the Commonwealth with the Attorney General and the Department of Justice.[3] The Fiscal Code imposed an affirmative duty upon the Auditor General to audit the accounts of every agency receiving funds from the State Treasury.[4]

Under Section 706 of the Administrative Code, 71 P.S. §246, the Auditor General did retain such powers as were vested in him at the time of the enactment of the Administrative Code. However, as we have previously noted, in 1929 the Auditor General had no authority to institute suit because his authority to do so had been removed from him by the Act of June 7, 1915.

With this background in mind, we consider the significant relevant amendments made in 1970 to the Administrative Code. The Act of December 17, 1970, P. L. 935, amended several provisions of the Administrative Code to authorize separate legal counsel for the Auditor General. Specifically, Section 512, 71 P.S. §192; Section 902, 71 P.S. §292; subsection (b) of Section 903, 71 P.S. §293(b); and Section 906, 71 P.S. §296, were amended to read as follows (language added by the amendment is underscored):

---

[3] See the Administrative Code, Sections 704, 71 P.S. §244; 512 71 P.S. §192; 902, 71 P.S. §292; 903, 71 P.S. §293; 906, 71 P.S. §296; and 908, 71 P.S. §298.

[4] See The Fiscal Code, Section 403, 72 P.S. §403, and *Volunteer Firemen's Relief Association v. Minehart*, 415 Pa. 305, 203 A. 2d 476 (1964).

"Section 512. Legal Advice and Services.—Whenever any department, *other than the Department of the Auditor General,* board, commission, or officer of the State Government, shall require legal advice concerning its conduct or operation, or when any legal difficulty or dispute arises, or litigation is commenced or to be commenced in which any department, *other than the Department of the Auditor General,* board, commission, or officer, is concerned, or whenever any taxes or other accounts of any kind whatever due the Commonwealth remain overdue and unpaid for a period of ninety days, it shall be the duty of such department, board, commission, or officer, to refer the same to the Department of Justice.

"It shall be the duty of any department, *other than the Department of the Auditor General,* board, commission, or officer, having requested and received legal advice from the Department of Justice regarding the official duty of such department, board, commission, or officer, to follow the same, and, when any officer shall follow the advice given him by the Department of Justice, he shall not be in any way liable for so doing, upon his official bond or otherwise.

"Before the Department of Justice shall render any opinion, interpreting any appropriation act, or act authorizing the expenditure of money, it shall notify the Department of the Auditor General and the Treasury Department, of the question upon which its opinion has been requested, and afford to these departments an opportunity to present any views which they may have upon such question.

"It shall be unlawful for any department, *other than the Department of the Auditor General,* board, commission, or officer, of the Commonwealth, to engage any attorney to represent such department, board, commission, or officer, in any matter or thing relating to the public business of such department, board, commis-

sion, or officer, without the approval in writing of the Attorney General."

"Section 902. Legal Advice.—The Department of Justice shall have the power, and its duty shall be:

"(a) To furnish legal advice to the Governor, and to all administrative departments, *other than the Department of the Auditor General,* boards, commissions, and officers of the State Government, concerning any matter or thing arising in connection with the exercise of the official powers or the performance of the official duties of the Governor, or such administrative departments, boards, commissions, or officers;

"(b) To supervise, direct and control all of the legal business of every administrative department, *other than the Department of the Auditor General* board, and commission of the State Government."

"Section 903. Litigation.—The Department of Justice shall have the power, and its duty shall be:

. . . .

"(b) To represent the Commonwealth, or any department, *other than the Department of the Auditor General,* board, commission, or officer thereof, in any litigation to which the Commonwealth or such department, board, commission, or officer, may be a party, or in which the Commonwealth or such department, board, commission, or officer, is permitted or required by law to intervene or interplead."

"Section 906. Deputy Attorneys General.—In addition to such deputy attorneys general as may be appointed to assist in the conduct of the regular work of the department, the Attorney General, with the approval of the Governor, shall have power:

"(a) To appoint and fix the compensation of such special deputy attorneys general, as may be required, to represent and advise the Workmen's Compensation Board, and any other departments, *other than the Department of the Auditor General,* boards, and commis-

sions, which may require the services of counsel to such an extent as to render it reasonably necessary to assign deputy attorneys general exclusively to their work. . . .

"(b) From time to time appoint and fix the compensation of special deputy attorneys general, and special attorneys to represent the Commonwealth, or any department, *other than the Department of the Auditor General,* board, or commission thereof, in special work or in particular cases.

"(c) To appoint and fix the compensation of deputy attorneys general, to represent the Commonwealth, and the several departments, *other than the Department of the Auditor General,* boards, and commissions thereof, in all legal matters arising in any city or county, other than the State capital, except as otherwise provided in this act: Provided, That the same deputy attorney general may be assigned to two or more cities or counties in the discretion of the Attorney General."

Also, the Act of December 17, 1970, P. L. 935, added two new sections to the Administrative Code. Sections 1002, 71 P.S. §312, and 1003, 71 P.S. §313, read as follows:

"Section 1002. Chief Counsel; Deputies.—The Auditor General shall have the power to appoint and fix the compensation of a chief counsel and such other deputy counsels as the Auditor General deems necessary to provide legal assistance to the Auditor General."

"Section 1003. Powers and Duties of Chief Counsel.—The office of the chief counsel to the Auditor General shall have the power and its duty shall be:

"(a) To furnish legal advice to the Auditor General concerning any legal matter or thing arising in connection with the exercise of the official powers or performance of the official duties of the Auditor General.

"(b)  To supervise, direct and control all of the legal affairs of the Department of the Auditor General.

"(c)  To represent the Auditor General in any litigation to which the Department of the Auditor General may be a party or in which the Department of the Auditor General is permitted or required by law to intervene or interplead."

We have carefully studied these amendments and conclude that they do not grant the Auditor General the authority to institute suit to collect debts due the Commonwealth.  If the Legislature had intended to grant such authority, it could have expressly done so in the same manner that it repeatedly used to exclude the Auditor General from those provisions of the Administrative Code set forth above.  Thus, subsection (a) of Section 903, 71 P.S. §293(a), could have been easily amended to read: "(a) To collect, by suit or otherwise, all debts, taxes and accounts, due the Commonwealth, which shall be placed with the department for collection by any department, board or commission, *other than the Department of the Auditor General.*"  We hasten to add that this is not what the Legislature did but, significantly, subsection (a) of Section 903 was left untouched by the 1970 amendments, and this becomes of more importance when considered in connection with the Section 512 requirement that departments, boards, commissions, or officers, refer to the Department of Justice "any taxes or other accounts of any kind whatever due the Commonwealth."[5]

Here it was the Treasurer of the Commonwealth who was specifically designated by the provisions of Act 61-A of August 31, 1971 to be the officer to whom

---

[5] The pleadings and exhibits fail to disclose that the Auditor General notified the State Treasurer of the alleged debt of the defendant for the purpose of the Treasurer's referring the matter to the Department of Justice. However, the Governor was advised of the matter by the Auditor General by letter of July 23, 1973.

the disallowed expenditures would be paid by The Pennsylvania State University. Therefore, this account, after becoming due and remaining payable for a period of ninety days, must be referred by the Treasurer of the Commonwealth, in accord with the third clause of Section 512, to the Department of Justice.

Even if we could infer, from the added Section 1003, that the Auditor General acquired the power to bring suits to collect debts owing to the Department of the Auditor General, we would be compelled to conclude here, where the reimbursement allegedly owed by The Pennsylvania State University is payable to the Treasurer of the Commonwealth, that Section 512 requirements applicable to the State Treasurer are controlling. We repeat, those requirements direct the State Treasurer to refer the unpaid account to the Department of Justice.

We are satisfied that the 1970 amendments to the Administrative Code were intended by the Legislature to provide the Auditor General with legal counsel of his own selection but were not intended to invest him with the power or authority to institute suits on behalf of the Commonwealth to collect accounts related to any department, board, commission or officer, other than the Department of the Auditor General, and thereby significantly diminish the Attorney General's recognized authority to do so. Such a departure, or reallocating of authority, would have merited—and we conclude would have received—a more expressive directive from the Legislature than is evidenced by the 1970 amendments here under consideration.

Likewise, we do not interpret the provisions of Act 61-A of August 31, 1971 to constitute a grant of authority for the Auditor General to institute this litigation. This appropriation act contained the following pertinent language: "Not later than one hundred twenty days after the close of the fiscal year to which this

act relates, the Pennsylvania State University shall file with the General Assembly and with the Auditor General of the Commonwealth, a statement setting forth the amounts and purposes of all expenditures made from moneys appropriated by this act. . . . Such statement of expenditures shall be reviewed by the Auditor General of the Commonwealth, and he shall have the right, in respect to the money appropriated by this act, to audit and disallow expenditures made for purposes not permitted by this act and to cause such sums to be recovered and paid by the Pennsylvania State University to the Treasurer of the Commonwealth."

Thus, the Auditor General is required to review the statement which The Pennsylvania State University must file and, in addition, he shall have the right, in respect to the money appropriated by Act 61-A, to audit and, beyond the audit, "to cause such sums [expenditures made for purposes not permitted by Act 61-A] to be recovered and paid by the Pennsylvania State University to the Treasurer of the Commonwealth."

Admittedly, the words "to cause such sums to be recovered" would be supportive of the contention advanced here by the Auditor General that he is empowered to institute legal action designed to make such a recovery. However, these words could also be reasonably interpreted to evidence a legislative intent that, upon discovery by audit, the Auditor General should refer the matter through the State Treasurer to the Department of Justice for the performance of its statutorily imposed duty to collect, by suit or otherwise, *all* debts due the Commonwealth.[6] We are of the opinion that this latter interpretation is the correct one since it results in Act 61-A's being in conformity with the provisions of the Administrative Code rather than in the repealing by implication of a major provision of the

---

[6] Section 903(a) of the Administrative Code, 71 P.S. §293(a).

Administrative Code by an appropriation act providing funds to The Pennsylvania State University. We are unable to conclude that the Legislature intended, by the use of general language in an appropriation act, to impliedly repeal Section 903(a) of the Administrative Code and revise the relative powers of the Attorney General and the Auditor General as provided in the Administrative Code. Such a conclusion is also in accord with the provisions of Section 2 of the Act of April 21, 1857, P. L. 266, 71 P.S. §812,[7] which has never been expressly repealed, nor does our research satisfy us that it was impliedly repealed by the Administrative Code.

Accordingly, we make the following

### ORDER

Now, this 29th day of March, 1974, the defendant's preliminary objection in the form of a demurrer for failure of the plaintiff to state a claim upon which relief can be granted is sustained, and the plaintiff's complaint is hereby dismissed.

---

[7] Section 2 reads as follows: "All debts which the auditor general and state treasurer know to be due the commonwealth, from all sources whatsoever, and which shall have been due and unpaid for ten days after the time fixed by law for appeals shall have expired, shall be handed over by said auditor general and state treasurer respectively to the attorney general for collection; whereupon he shall proceed without delay to collect the same by suit or otherwise, as he may deem most conducive to the interests of the commonwealth, and he shall pay over to the state treasurer all moneys received by him within ten days from the receipt of the same: Provided, That nothing in this act shall prevent the state treasurer or auditor general from placing claims in the hands of the attorney general for collection at any time before the expiration of said ten days."